107 F.3d 873
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert B. KIZER, Petitioner-Appellant,
v.
Al C. PARKE, Superintendent of the Indiana State Prison,
[1] Respondent-Appellee.
 No. 96-1448.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 29, 1997.[2]
Decided Feb. 27, 1997.
 
 Before FAIRCHILD, BAUER and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 Robert B. Kizer, an Indiana state inmate, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, raising procedural due process challenges related to a sanction of one year in disciplinary segregation, imposed after he was found guilty of physically resisting a staff member who was acting in the performance of duty.
 
 
 2
 The new amendments to § 2254(d), see § 104(3) of Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214, 1219 (Apr. 24, 1996), apply to this case,[3] which was pending at the time the amendments became effective. Lindh v. Murphy, 96 F.3d 856 (7th Cir.1996) (en banc), pet'n for cert. granted, No. 96-6298 (U.S. Jan. 10, 1997), 1997 WL 8539. The new standard provides that a writ will not issue unless the constitutional error "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Lindh, 96 F.3d at 868-71; Evans v. McBride, 94 F.3d 1062, 1064 (7th Cir.1996). We review the denial of a writ for a petition of habeas corpus de novo and all factual determinations for clear error. Bocian v. Godinez, 101 F.3d 465, 468 (7th Cir.1996); Harmon v. McVicar, 95 F.3d 620, 622 (7th Cir.1996).
 
 
 3
 The existence of a liberty interest which might give rise to procedural due process rights is reviewed under Sandin v. Conner, 115 S.Ct. 2293, 2300-01 (1995), which requires that we look at whether the discipline imposed by the prison officials worked "a major disruption in his environment" such that the segregation resulted in an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Kizer focuses on whether one year of disciplinary segregation will always fall within this definition, whether the conditions in segregation mirrored those in the general population, and whether the year of segregation will affect his sentence. The focus, however, should be on his return to segregation after the nine days he spent in the general population when he should have been in disciplinary segregation.
 
 
 4
 Kizer was placed in the Individual Disciplinary Unit (IDU) on February 8, 1995, and was to remain there for one year. At the recommendation of the IDU team and with the approval of the classification supervisor, on March 16, 1995, Kizer was released from IDU and returned to C-cellhouse, with the condition that he not become involved in any other rule violation. Herbert Newkirk, then Acting Superintendent, disagreed with this placement decision, found it to be an "administrative error," and ordered that Kizer be returned to IDU on March 25, 1995. On May 8, and May 24, 1995, the IDU team again recommended that Kizer be released from IDU. On May 25, 1995, he was released from IDU according to the terms of a "Conditional Release Agreement" between the parties. Thus, Kizer was sentenced to serve one year, and he only served approximately 97 days.
 
 
 5
 Kizer argues that when he was returned to IDU he should have received a new notice and disciplinary hearing. We disagree. The return to segregation after the brief 9-day period he spent in the general population did not constitute an "atypical and significant hardship ... in relation to the ordinary incidents of prison life" or a "major disruption in his environment." Sandin, 115 S.Ct. at 2300-01. The fact that the 97 days in segregation were interrupted by a period of nine days when, due to an administrative error, he was released from IDU, does not create a liberty interest or procedural due process rights.
 
 
 6
 And Kizer does not argue that in the original placement in segregation he was deprived of procedural due process under Superintendent v. Hill, 472 U.S. 454, or Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). He received advance written notice of the charges; an opportunity to call witnesses and present evidence in his defense; and a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action. Hill, 472 U.S. at 455; Wolff, 418 U.S. at 563-67.
 
 
 7
 For the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Petitioner named both Parke and the Attorney General of Indiana as respondents. When a petitioner is in custody, he shall name as respondent the state officer having custody of petitioner. 28 U.S.C. § 2254, Rule 2. We have therefore stricken Pamela Lynn Carter as a respondent
 
 
 [2]
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [3]
 Nevertheless, we also determine that even under the broader standards in place prior to the Act, Kizer would not be entitled to federal habeas corpus relief. See Stone v. Farley, 86 F.3d 712, 716 n. 3 (7th Cir.1996)